SMITH *v.* JONES; *et vice versa.*

Nos. 11938, 11954. NOVEMBER 13, 1937. REHEARING DENIED DECEMBER 9, 1937.

*Frank L. Neufville* and *A. E. Wilson,* for plaintiff in error in main bill of exceptions.

*G. N. Bynum,* contra.

GRICE, Justice. The first special ground of the motion for new trial is based on the fact that at the time of the rendition of the verdict the presiding judge was not in the court-room, he being in his chambers on another floor of the court-house. After the jury had retired and the judge had left the bench, counsel for both parties were sitting in the anteroom, when the bailiff in charge made a statement that he understood the jury were ready to return a verdict. The bailiff called the judge on the telephone, and counsel for both parties came into the court-room preparatory to seeing the verdict received. When the jury returned the verdict it was given to the bailiff, who brought it to the court-room in the absence of the judge, who was then in his chambers. The judge was under the impression that counsel for both sides had agreed upon an open verdict, and so stated to the bailiff in charge.

There is specific authority for receiving verdicts, by agreement, otherwise than in open court. Code, § 110-107; *Malcolm* v. *Pollock,* 181 *Ga.* 687, 689 (183 S. E. 917). If there had been an express agreement by the defendant and .his counsel that the verdict might be received and published in the manner shown by this record, he would be bound by the waiver, and estopped from attacking the validity of the verdict because of the irregularity to which they had agreed. *Hughes* v. *State,* 159 *Ga.* 818, 819 (127 S. E. 109). There are methods of expressing agreement other than by word of mouth. Conduct can be as articulate as language. An old adage declares that actions speak louder than words. The books are full of instances where parties were estopped though they were speechless at the time. Indeed, silence, when the occasion calls for utterance, is a frequent ground of estoppel. It is clear from the judge's note that he thought there was an agreement that the jury could render their finding as they did, and the action of counsel when the jury came in was consistent with this understanding of the judge, though it is to be fairly inferred from this record that the judge was in error in supposing that theretofore there had been such an agreement.

It is granted that the word "consent" is not an exact synonym of the word "agree," as was stated by Chief Justice Russell in his dissent in *Malcolm* v. *Pollock,* supra; but one of the definitions of "agree" is "consent," according to Webster, and the same authority gives, as one of the definitions of the word "agreement," "a concurrence in an engagement that something shall be done or omitted." The first definition of the word "agreement" given by Bouvier is "A coming together of parties in opinion or determination; the union of two or more minds in a thing done or to be done; a mutual assent to do a thing." "But," continues Bouvier, "the assent need not be formally made; it can be inferred from the party's acts; L. R. 6 Q. B. 607; L. R. 10 C. P. 307; 90 Ala. 529 [8 ·So. 144]." We think that an agreement between all concerned, that the verdict be returned as it was, might well be implied from the acts of the defendant and counsel for both parties, who were present when the jury came in. The judge was in the courthouse, but not in the court-room, when the jury returned with the verdict. Counsel for the defendant of necessity knew that the judge was not present to receive the verdict. They had been ap-

prised by the officer in charge of the jury that he understood they were ready to return a verdict. In the note appended to his approval of the grounds of the motion, the judge, in certifying to what occurred in this connection, adopted a statement prepared by one of the counsel for plaintiff in error, as follows: "Mr. Cason [the bailiff] called the judge over the telephone, and then Mr. Wilson, Mr. Neufville, counsel for defendant, and Mr. Bynum, counsel for the plaintiff, came into the court-room preparatory to seeing the verdict received, when the bailiff in charge brought the verdict in and handed it first to the defendant in the case, Mr. Smith; and Mr. Smith then, in turn, delivered it to Mr. Neufville. Mr. Neufville [one of defendant's counsel] received the papers and verdict and read it, and then carried it to Mr. Wilson, also the defendant's attorney, and Wilson read it before making any complaint about it." Indeed, the only complaint made appeared for the first time in the amendment to the motion for new trial. The record contains a copy of the decree, which recites: "Whereupon the jury, in the trial of the case stated above, having rendered a verdict in favor of the plaintiff," etc. It must be presumed, therefore, that the verdict was later handed to the clerk (for a copy of it too is in the record), and that the presiding judge took cognizance of it in entering the decree. It was therefore, in the end, returned into court, and the record does not disclose that at that time any objection was made that previously the verdict had been, out of the presence of the judge, delivered by the jury to the bailiff, he handing it to the plaintiff in error, who in turn delivered it to one of his counsel, and he to another of his counsel, who read it. This was irregular, but the defendant is not in position to complain about it for the first time in his motion for new trial. "A party can not wait to see which way the jury finds, and then, if the verdict is adverse to him, object to some mere irregularity in the mode of receiving or publishing it, of which he had knowledge in advance." *Sizer* v. *Melton,* 129 *Ga.* 143, 153 (58 S. E. 1055).

The other rulings announced in the headnotes, taken in connection with the statement of facts, need not be elaborated.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. All the Justices concur, except Russell, C. J., who dissents.*